The opinion of the Court was delivered by
Wabdlaw, J.
Barrett’s conveyance to Mansell was never recorded. The sale by the sheriff to Hagood was made in 1829, and the sheriff’s deed to Hagood was recorded within six months from its date. Whether the debt of Corbin to Hagood, upon which, in October, 1824, Hagood recovered judgment, was contracted before or after April, 1824, when Corbin conveyed to Barrett & Hill, did not appear.
With these additions to the report, the case presents a conveyance of land, not recorded within six months from its delivery, nor before a creditor had, after the expiration of the six months, obtained a judgment against the grantor, but recorded nearly four years after its delivery, yet before a sale of the same land was made by the sheriff under that judgment, and of course before the sheriff’s deed was recorded, — which deed was recorded within six months from its delivery: — to wit:
Deed of Corbin to Barrett & Hill, delivered April 10, 1824, recorded March 3, 1828
Judgment, Hagood vs. Corbin, entered October, 1824; sale *440 and deed thereunder by sheriff to Hagood, July, 1829; deed recorded August, 1829.
It did not appear that Hagood, before the deed to him, had actual notice of the conveyance made by Corbin to Barrett &. Hill. So that the case is unaffected by notice, and depends upon the influence of our registry laws upon the first conveyance.
The sheriff’s deed to Hagood is the same as if it had been made by Corbin (a) — a second deed by the same grantor to a subsequent purchaser without notice.
The questions are, (1) Had the subsequent judgment priority over the unrecorded conveyance ? (2) If not, the first conveyance having been recorded before any subsequent conveyance was made, has the sheriff’s deed, which was recorded within six months, priority over that first conveyance ?
1. The first question has often been decided against the subsequent judgment, if we consider it as identical with the question between a judgment and a prior unrecorded mortgage of land.(b) A distinction has, however, been suggested in this case between an absolute conveyance, and a mortgage of land under the Act of 1791, (c) which converted such a mortgage from a conveyance of estate into a pledge, and taking under ordinary circumstances from the mortgagee all right to maintain a pos-sessory action, enacted that even after breach of the condition, the mortgagor should, before foreclosure, be regarded as owner of the land. The absolute conveyance and the mortgage are both embraced by the same provision in the registry Acts of 1698 (d) and 1785 (e): either transferred the legal title before 1791, and since the Act of 1791, if any distinction can be made between them, as to the effect of non-registration in a contest with a subsequent judgment, there is rather more reason for *441 giving preference over the judgment to the absolute conveyance than for giving it to the mortgage. An absolute conveyance is usually followed by a change of possession, inducing inquiry, if net giving notice: a mortgage is usually secret and contradictory of the ordinary signs of ownership. A judgment acquires a lien upon the property of the defendant, not upon the property which he had transferred before its entry: its lien attaches upon land which he had mortgaged, subject to the prior lien of the mortgage, but attaches not at all upon land which he had absolutely conveyed by unexceptionable deed. If then a mortgage not recorded, could, under the Acts of 1698 and 1785, have availed, to the extent of its lien, to bar the right of a subsequent judgment creditor in land whereof the mortgagor was still owner, much more could an absolute conveyance, not recorded, have availed to bar all right of such creditor in land, of which the debtor by that conveyance had been wholly divested. A statute certainly might provide, that against a judgment, neither mortgage nor absolute conveyance should avail, if not recorded, or not recorded within a prescribed time; but if the registry Acts, before mentioned, embracing all deeds of conveyance, mortgages included, did not so provide as to a mortgage, a for-tiori they did not as to an absolute conveyance. The Act of 1843(f) has now made special provisions concerning the recording of mortgages, but does not embrace other conveyances. If it was needful, a strong argument, to shew that, by the preexisting law, an unrecorded mortgage of land was preferred to a subsequent judgment, might be drawn from the legislative construction contained in this Act. Additional arguments, too, might be drawn from the decisions, which have established, even more conclusively than is established concerning land, that an unrecorded mortgage or sale of personalty, unimpeached for fraud, has priority over a subsequent judgment.(g)
Our first question, standing alone, might, however, be safely rested upon the authority of Barmoell and Porteous, (h) and *442 the observations made by Judge EvaNS in that case. It had, when that case was decided, been long regarded as a settled question — so much so, that the decision in favor of the mortgage was followed, even by Judges who did not approve it. Nearly twenty years more have now been added to the time, during which there has uniformly prevailed on this subject of every day occurrence, the rule then recognized as of forty years’ standing. In vain may it now be shown that Ashe vs. Ashe, (i) and other cases, out of which the rule grew, were decided altogether in reference to the Act of 1698, in places where, and at times when, the Act of 1785 was not considered to be of force. However introduced, the rule has, ever since 1799, (k) when a uniform system of judicature was established throughout the State, been acted on, where the 45th sect, of the Act of 1785 was acknowledged to be of force, either in conformity with that section, or notwithstanding it; and for the Court now to reverse it, would be rashly and unjustly to take many valuable lands from those, who are the owners according to the law as it has heretofore been expounded.
2. Under the second question, the priority of the first conveyance cannot be established by authority so plain as that which has been cited on the first question. It seems to be involved in the point first adjudged in Barnwell vs. Porteous — but not directly. There it was held that a second conveyance recorded after the expiration of six months from its delivery, acquired by reason of its being so recorded, a preference over a former mortgage which had never been recorded. This decision proceeded upon the opinion, never questioned in our Courts, that the Act of 1698, remained, after the passing of the Act of 1785, still of force, unaltered except so far as it was repugnant to the later Act: and the decision necessarily.recognized the recording of a deed, after the expiration of the six months, as a valid recording.
In the case of Martin vs. Sale (l), the first mortgage of land, which was to Mayson, was not recorded until the six months had expired: it was, however, preferred over a second convey *443 anee to Johnson Sale, because he had notice of it, and it was preferred over a mortgage to Brooks, which was made after it had been recorded. Judge Nott ^ys, “It never was doubted that recording was notice to all the world, and the mortgage to Mayson, having been made and recorded before that to Brooks was executed, was undoubtedly entitled to a preference.” This would be an express decision of the question now before us, if it appeared clearly, (as I think is implied,) that Brooks’s mortgage had been recorded within six months from its delivery: in any view, it is a decision that recording after the six months, is still, from the date of the recording, notice.
That a deed recorded before another deed was made, is entitled to priority, notwithstanding the lapse of six months between its execution and its recording, seems a natural inference from the proposition, that the recording after the six months is a valid recording ; and the general acknowledgment of this observation is probably the reason why many express decisions confirmatory of the inference are not to be found. Cases involving the point must often have arisen and been decided ; but those who found the proposition established by authority, seem to have regarded the inference as unquestionable.
The debate upon the case now before the Court has, however, been earnest and protracted. Against the conclusions we have attained, it has been urged that by the words of the Act of 1785, a deed not recorded within the prescribed time, is made void as to a subsequent purchaser whose deed has been duly recorded; that no decided case is directly opposed to the plain expression of the legislative will, and if any such case existed that it would not be authoritative. Even the priority of a conveyance, recorded after the expiration of the prescribed time, over a judgment subsequently recovered, has been denied; and thus both of the questions, into which we have resolved this case, have been opened, and a decision of one or the other of them in favor of the appellee, has been insisted upon with a confidence, which, perhaps, would not have been felt, if either of them singly had been presented.
*444 This Court, of course, disclaims legislative authority, but its members assume not to be wiser than their predecessors, and feel the importance of adhering to the interpretation which a statute has received; especially in a matter of every day business, where the interpretation has long prevailed, and may well be supposed to have hardened into a rule, to which both legislature and community have conformed.
The grave discussions which have been had of this case seem, however, to render this a fit occasion to look somewhat into the reasons of the decisions that have been made. It will be useful to find that the imputed inconsistency does not exist between the words used by the legislature, and the construction giv§n by the Courts.
//G>ur registry law was, before the Act of 1843, concerning /mortgages,(m) lamentably obscure and deficient, and that Act | /has afforded no remedy in respect to absolute conveyances. A /natality seems to have attended all the legislative attempts on I this subject. In the Act of 1698,(n) as it has always been printed, some important words are manifestly wanting : — in the 46th section of the County Court Act of 1785,(o) perspicuity of *445 expression is much neglected: but above that, the obvious intention of the legislature to provide a general system of registry for deeds and conveyances of all hinds, in every part of the State,(p) has been frustrated by the County Courts going into *446 only partial operation,(q) and by the omission in the Act of 1785 of a clause relating to deeds of personalty, or such jumbling of terms as fell short of the intention, and created great doubt and confusion(r): — the Act of 1785(s) concerning the recording of *447 marriage settlements, was so perverted, in transcribing the engrossed Act from the original draught, that even after the amendment of 1792,(t) it was in part nonsensical, until the original draught was printed, after the Act had perplexed the Courts for many years(u): — the second section of the Act of 1823,(v) which altered the law concerning the recording of marriage settlements, was a hasty clause added to a bill upon a subject, with which the clause was loosely connected, and after the declaratory and saving Act of 1832,(w) has been prevented, only by liberal construction adopted after repeated discussions, from doing, by its sweeping phraseology, injustice and mischief, Avhich could never have been designed by its framers(x): — and even the Act of 1843[y] leaves for future discussion difficult questions concerning mortgages which preceded the date as *448 signed for its going into operation, and those that may have been recorded after the prescribed time, but before opposing rights accrued.
The Act of 1698, enacted by the Palatine and other Lords Proprietors, by and with the consent of the General Assembly of the Province, provides, that between different conveyances and mortgages of the same property, that one concerning real property shall be deemed first, which was first registered in the Register’s office ; that one concerning personal property, which was first recorded in the office of the Secretary of State. When or how the Register’s office was established, or what, if any, previous regulations were made concerning it, our statute books do not inform us. This Act recognizes it as existing, and a subsequent Act of 1731,[z] reciting that by a law of the Province a Register had been appointed in like manner as such an officer was appointed by certain Acts of Parliament, in the County of Middlesex and other parts of Great Britain, and that experience had here shown the usefulness of the office, enacts that the office shall continue wholly distinct from any other. Under the Act of 1698, extreme diligence was encouraged; for every moment which intervened between the execution of an instrument and its registration, was subjected to the risk of priority being acquired by the registration of another instrument, made concerning the same property to another grantee not affected by notice. From judgments, or general creditors, there was, however, no danger to be apprehended under this Act, for no provision was made in behalf of any of them, and any lien which a judgment might subsequently acquire upon the property contained in an unregistered instrument, was subject to the encumbrance created by that instrument.[aa]
The 45th section of the County Court Act of 1785, prescribed a time within which mortgages and other conveyances should be recorded, in the office of the clerk of the County Court for *449 that county in which the lands conveyed lay, to make them effectual to convey an estate of inheritance or freehold ; and declared, that if not recorded within the time prescribed, all deeds should be valid between the parties only, but not capable of barring the rights of “ persons claiming as creditors, or under subsequent purchases, recorded in the manner herein before prescribed.” Within the prescribed time, this 45th section moderated the diligence required by the Act of 1698 : it, in effect, provided, that a registration, made within the time, should have relation to the date of the deed, so as to precede a previous registration of a deed of later date : whereas, under the Act of 1698, the order of precedence was identical with the order of registration. Even if we admit that, by the section where it stood alone, registration, after the prescribed time, was altogether nugatory, it will be seen that where the two acts co-exist, so that the provisions of both must be regarded so far as their repugnancy can be reconciled, they give effect to every registration, referring it, if done with the prescribed time, to the date of the deed, and, if done after the time, to the day of registration. This result of the joint operation of the two Acts, is the present i law of our State, and has been produced gradually by Acts | of legislation, decisions and usages, which have made for the ¡ whole State a. single uniform system out of two different systems j that formerly prevailed, one where there were County Courts, j and the other where there were not.
In those Districts, Charleston especially, where County Courts did not go into operation, the 45th section of the County Court Act was held to be inapplicable and not of force: there was no County Court there in which deeds could be proved and recorded according to its requisitions, and registration was regulated only by the At of 1698.(bb) In January, 1800, the County Courts were abolished,(cc) the records of those courts were transferred to the offices of the district clerks “ to be kept and continued of record,(dd) and every district clerk (except those of Charleston *450 and Georgetown) was made, not a successor to the county clerk or a substitute charged with his duties, but in express terms a register of mesne conveyances.(ee) To the new Registers thus created, the law applied which was before applicable to the Registers that before existed; and in that law no change was then- made. The appointment of Registers of mesne conveyances for -the several districts, was contemplated by the constitution of 1778 (ff): in 1786 such Registers were accordingly appointed for the Districts of Beaufort and Georgetown-) (where County Courts were not in operation,) and were vested •with the libé powers and authorities as-were then exercised by the Register in Charleston (gg): in -1791, after the suspension of the County Courts in Orangeburg, a Register of mesne conveyances in that district was provided for(hh), and when in 1799 one was appointed for each of the other districts, uniformity throughout the State was produced. Thenceforward, as always before, the Act of 1698 prevailed in Charleston ; and for a long time afterwards, it still prevailed there alone and unaffected by the County Court Act, which had never been known to the practice there(ii): the registries of the districts, where County Courts had been in operation, were by law emanations from, and . copies of, the one in Charleston, and in them too the. Act of 1698 of course prevailed but in 'them the modifying influence of the 45th section of the County Court Act, to which they had been accustomed, was feltand gradually that influence was extended to. Charleston. At last, every where, conveyances and mortgages'of land, appropriately' belonging to the office of the .Register of mesne conveyances under the Act of 1698, were registered in the registry of the district where the land lay— every registration made within the prescribed time having, under the Act of 1785, relation to the date of the deed, and every one made after the time having, under the Act of 1698, *451 effect only frota the day of registration : — deeds of marriage set tlement, under'.the special, provisions concerning them made in 1785,(kk) went to the Secretary of State: — and all deeds affech iug personalty left the district registry, and, under the Act of 1698, sought priority in the office of the Secretary. By various decisions, the latter office was declared to be the only one for these deeds (ll) and the district registry remained unsuitable for any of them, until the Act of 1823 [6 Stat. 212] required marriage settlements, and the Act of 1843 [11 Stat. 256] required mortgages of slaves to be recorded there.
There is no express statutory provision, which substitutes a district registry of mesne conveyances for the office of clerk of the County Court: nor any which, in any other way, requires that the recording of conveyances in the Register’s office shall be within a prescribed time. There is no statute which makes a rule, as to the order of priority arising from the registration of absolute conveyances, in Charleston at this day, different from the rule that prevailed there before 1785 : nor any that makes a rule on the subject for the Register’s office of another district, different from what is the law in Charleston. Instead then of the express words of an Act, which, under certain penalties, required recording in the cleric's office of the county within a prescribed time, being violated by the decisions that have blended into one uniform scheme two Acts in pari materia, it has been only by indulgent respect for the opinions and practices that grew up under the county courts, that the 45th section of the Act of 1785 has been permitted to outlive the system of which it was a part.
The executors’ Act of 1789, § 26, (mm) in arranging the order of debts, mentions “ mortgages that shall be recorded from the time of recording,” and the mortgage Act of 1791 (nn) affirms that “ mortgages shall be paid in the order the same are record *452 ed, agreeably to law, and in no other order — both of these Acts thus shewing, that even whilst the county court system was in operation, the Act of 1698 formed part of the registry law of the State, applicable to mortgages as well of real estate as of personal.
1. Again. Acknowledging both the Act of 1698 and the 45th section of the County Court Act to be of force, so far as they could be reconciled to each other, and to the alterations that had been made in the Courts and offices of the State, the Judges after 1800 were brought to the question between an unregistered conveyance of real estate and a judgment against the grantor. The question had been before that time decided in favor of the conveyance, in Charleston, where only the Act of 1698 had prevailed :* and subsequently it arose again; first in Charleston, where it was again decided in the same way, by the authority of the previous decisions,† without notice of any difference made by the abolition of county courts, and probably without a conception that thereby a clause of the County Court Act, which before did not apply to Charleston, had become law for the whole State. When the question was presented in the districts, where county courts had been in operation, and the 45th section of the Act of 1785 was familiarly and advantageously known, the Charleston decisions were followed,, and that 45th section reconciled to them, by holding that the meaning of the words, “ claiming as creditors,” in the section, was uncertain, and that coupled, as these words might be, with “ recorded in the manner herein before prescribed,” they comprehended only such creditors as claimed by mortgage or some other writing that might be recorded, (oo) It may be that this was not a correct construction of the section, and that it would have been better to hold, that a judgment entered is like a mortgage recorded, and by the section an unregistered deed is made ineffective to withstand the lien of the judgment, which attaches as if there was no such deed, unless notice of it has come to the *453 creditor from change of possession or other circumstances. But those who cavil at the construction should remember, that the Charleston decisions, made after January, 1800, were either to be followed or overruled: — that deeds of personalty not having been embraced by apt words in the County Court Act, the registration of them was governed only by the Act of 1698, so that beyond dispute such a deed, although unregistered, had priority over a judgment,‡ and great confusion would have resulted from giving to a judgment a lien upon land, and not upon chattels, where both were included in the same deed, or in different deeds in the same predicament: — and that the uncertainty of the words, persons claiming as creditors, will be acknowledged by any one, who will undertake to define what they embrace. Do they mean all creditors, or only those whose specific lien is interfered with by the unregistered deed : — those who have not recovered judgment, as well as those who have* prior, or subsequent, or both ? The theory of registry Acts is,l not that an unregistered deed is a fraud, (for if it is fraudulent,] it is, whether registered or not, void as to the persons defrauded by it) — but that publicity is likely to prevent frauds, and there^ fore a neglect of the mode provided to give publicity, is punished! by conferring superior rights upon those, who are most likely t„¿ suffer by concealment. With these matters in mind, we could not, by any speculations concerning the construction that was given to the words cited from the section so often mentioned, be carried further than to doubt its propriety. We cannot know to what results a different constfuction might have led, if it had been adopted, when the question was fresh; but we can be assured of the dangers which stand in the way of a change. Under every registry Act that has been passed in the State, decisions, conformable to the rule that prevails wherever registry laws exist, have held that, explicit notice is, so far as concerns those who had it, equivalent to registration, (pp) yet the Act of *454 1843* concerning mortgages is the only one of them that contains a word about notice. This whole train of-decisions about notice, might be overthrown with greater propriety than the decisions which held, that the Act of 1785 did not require registration to render a conveyance effective against a subsequent judgment; for the former, reasoning from the purpose of the Acts, introduce an exception which is not expressed, the latter only construe an obscure provision ; the latter have stood longer, are of more frequent application, and by their overthrow the stability of titles would be more seriously shaken.
2. Again. It is more easy to see how the opinion grew up without question, that, notwithstanding a time prescribed by the 45th section of the County Court Act,' a registration after time is a valid registration, sufficient to guard against all rights whieh had not then accrued, but which might be afterwards urged under deeds subsequently made, and recorded within the prescribed time.
A deed not registered is, by that section, made valid .as to the parties, and as to all the world, except the creditors and purchasers of a party, (qq) In the confidence which parties repose in each other, hundreds of deeds are never registered, and thousands are not registered within six months. If a deed was registered before the right of a creditor or purchaser arose, of what consequence can it be, that the registration was delayed until the six months had expired ? Being without registration good as to the party who made it, the deed might, as to all other persons, be considered as if it ha’d been executed on the day it *455 was registered, — in other words, as if it had been re-executed, or acknowledged, on the day. So, if that party should have been dead on the day of registration, the deed, good as to his heirs, might be considered as if it had been then confirmed by them. Even if infancy, coverture, or other disability, should prevent the supposition of confirmation on the day of registration, why should not the deed, binding as to all the world then existing, acquire by registration such indefeasibility, as thence arises, against that part of the world which afterwards sets up opposing rights subsequently acquired ? By delaying beyond a prescribed time, the grantee in a deed has lost the right to insist that the tardy registration shall have relation to the date of the deed so as to prevail against intervening claims, — but why should he lose the benefit of registration, from the day it was made ? As regards notice to be obtained by search of a registry, the same search which would disclose a deed registered within a prescribed, would disclose one registered after the expiration of the time ; and the same fraud, or disappointment of just expectation, which would arise from a first deed being registered between the search and the execution of a second one, might ensue, whether the registration of the first one was, or was not, within a prescribed time from its date. If it should be -decided that registration after the time does not avail against a subsequent deed executed after this registration and registered in time, a bona fide purchaser, whose conveyance was registered. after the expiration of six months, say only seven months from its date, and whose grantor had afterwards lived many years solvent and honest, might, when these years were past, be deprived of his land, because at last his grantor had fallen into embarrassment, and under execution against him the land had been sold. If it should be held that the judgment against the grantor had not preference over the conveyance tardily registered, and that notice to a purchaser at sheriff’s sale under the judgment, would as to him stand in the place of regular registration, then the right of the fair owner by former purchase to hold his land, would depend upon his vigilance in giving- *456 actual notice of his conveyance whenever the land was offered for sale by the sheriff, until it might happen that a sale could be made, when notice could not be brought home to a purchaser! who would probably have got a bargain by reason of the very efforts the owner had made to save his rights. Human sagacity could not foretell the extent of disastrous influence, which such a decision would have upon the land titles of the State.
These and similar reflections probably led to the conclusion, even in the county courts, that recording done there after the prescribed time, was, notwithstanding the delay, valid recording, having relation to the day it was done; and this, although the 45th section of the County Court Act may have been considered in these courts, as having superseded all previous registry Acts, and as standing alone for the law on the subject. This conclusion is contrary to the admission we before made for argument sake, but it is a plainer deduction from the purpose of registry laws, than is the acknowledged doctrine, that notice shall be accepted as a substitute-for registration ; and we may remark, in passing, that in no case has a distinction been made between notice before and notice after a prescribed time, as should have been done, if notice is only a substitute for registration, and such a distinction as to time determines the validity of a registration. But we have no distinct report of any thing decided in the county courts, nor of any decision made in our higher courts under the acknowledgment that the Act of 1785 was the only registry law applicable to conveyances of real estate. The executors’ Act of 1789,* the mortgage Act of 1791,† and such cases that have been preserved,‡ as throw a faint light upon the opinions concerning registration which prevailed before 1800, seem to show that even in the county courts, the Act of 1698 was always regarded as part of the registry law and as pervading the whole State, and that under its modifying influence upon the Act of 1785, recording after the time had effect from the day V>f recording.
*457 An Act of 1789(rr) might be supposed to contradict this. It recited that the 45th section of the Act of 1785 was concealed in the body of the County Court Act, and that many purchasers and mortgagees, not having discovered it, might be utterly deprived of the benefit of the conveyances to them, for want of recording; and it enacted, that mortgages and other conveyances of lands, required by the section to be recorded in the manner therein specified and not recorded, should be valid and effectual, anything in the section notwithstanding, provided they should, within twelve months thereafter, be recorded in the office of the Clerk of the County — or that of the Secretary of State, or that of the Register of Mesne Conveyances in any district where County Courts were not established — where such lands lay. This might appear to show, that without this saving Act, such mortgages and other conveyances, when afterwards recorded, would not have been valid and effectual even against rights that might have accrued after they were recorded. But recollecting that this Act preceded the adoption of our present State Constitution, and looking to its words, and the mischief it was designed to remedy, we will see that it was a temporary and conditional dispensation granted against the obnoxious section, and that it fell far short of its purpose, if it merely enabled the favored mortgages and conveyances to become effective against all deeds that might be afterwards made, and against all that had not, at the passing of the Act, the chance of acquiring precedence by being recorded within the time prescribed by the section, and against all that had not already acquired such precedence. It was intended, for the time and upon the proviso expressed, to put all such mortgages and conveyances in the same condition they would have been in, if the section had never become law: to give to them, under the Act of 1698, precedence according to the order of registration, in such manner that no priority should follow from a later registration being within a prescribed time, and that an older deed, recorded under the special indulgence, or previously recorded in the ancient registry, should not yield to a conflicting one that had, before the *458 Act, been recorded in the new and hidden registry that was created by the section. From this Act, notwithstanding looseness of expression in its recital, it cannot be fairly inferred, that lapse of the prescribed time ever-rendered subsequent recording wholly inefficacious.' It may, however^ be observed, that this Act comes nearer than any other that is to be found, to a legislative recognition of such general efficacy in the 45th section of the County Court Act, as would extend to other offices, the provisions which the section makes concerning tíre time for recording in a County Court, and the territory in which the lands lie.
But whatever may have been the law in the County Courts, it is plain, as we have shown before, that the Act of 1698 was always of force in a district where there was no County Court, and that it has been of force throughout the State since the abolition of County Courts, modified to some extent by the Act of 1785. The difficulty is, not to find authority legislative and judicial, for sustaining the Act of 1698, but to find any sufficient legislative direction for extending the terms of the Act of 1785 to a state of things not embraced by them. Our law, as we have said before, long expounded and acted on, is the result of the two Acts combined; — such as would have come from legislation, directly changing “ Clerk's Office of the County where the land lies,” used in the Act of 1785, into the Office of the Register of Mesne Conveyances for the district where the land lies, and appending to the provisions of the Act of 1785, the Act of 1698.
It has been objected that the decisions concerning marriage settlements under the Acts of 1785* and 1823,† show, that even against a creditor who extended credit, or a purchaser who bought, after the day a marriage settlement was recorded in the proper office, the recording is of no avail, if it was done after the prescribed time.(ss) We pretend not to assail those decis *459 ions. They well consist with what we hold as to ordinary conveyances, under the joint action of the Acts of 1785 and 1698. In 1785 the provisions concerning marriage settlements were peculiar, and thence onward they have been stringent and progressively exacting.‡ They have not admitted, and do not admit of the supplemental application to them of the Act of 1698, which gives priority according to the date of registration without limit of time. A marriage settlement itself is also peculiar, and has been looked on with jealousy.' It is a restraint upon the marital rights, — a modification of the results, which, -without it, would have ensued from the marriage ; and usually it is contradictory of the evidence which possession and other visible signs give of ownership. Marriage is a conveyance, open and notorious, — equivalent to a written instrument duly recorded, and generally extensive in its operation. Strong reasons of policy have been thought to justify the imposition and stern enforcement of severe terms, before priority over it is conceded to a deed of the parties, making for their special case a change of its legal effect, which if not cautiously guarded might easily become the means of defrauding innocent third persons.
Cases Contra. To the cases out of our own State which have been brought into the argument of this case, we do not think it necessary to refer. Strong analogies in support of our views might be drawn from some of them,(tt) and no doubt opposing inferences from others. But all questions concerning registry are necessarily so much influenced'by local regulations, and these are so various, that the decisions on the subject made under one sovereignty give very little aid in the consideration of cases under another.
Two manuscript cases of our own have, however, been dwelt upon, and require a hasty notice. Wholly inconclusive, and really immaterial as they are, detached sentences taken from the *460 opinions delivered in them, might mislead those who cannot have access to them.
In Segur s vs. Powers,(uu) James Kelly owned land, and in 1808 conveyed it to his infant son Ichabod, by deed without valuable consideration, which was never recorded. Having remained in possession, James Kelly, in 1817, again conveyed the land to Jones, who was informed of the previous deed to Ichabod, but assured that it would be destroyed. J.ones conveyed to Harrell in 1819 by deed, which was recorded June, 1824. Harrell, before the conveyance to him, had notice of the deed to Ichabod. Harrell conveyed to the defendant, Powers, (a bona fide purchaser without notice of the deed to Ichabod,) by deed dated June, 1820, and recorded November, 1820.
In 1823, Ichabod being of full age, after previous oral disavowals of all claim to the land, conveyed it to the plaintiff, by deed, which did not appear to have been recorded. Before the conveyance to the plaintiff, he knew of possession by Harrell and Powers.
On the Circuit, Judge Richardson held, that the defendant was protected against the prior voluntary conveyance to Ichabod by his purchase without notice, and by the proper recording of the conveyance to himself. Verdict for the defendant.
Judge Johnson, in delivering the opinion of the Court of Appeals, which dismissed the plaintiff’s motion for new trial, says in substance — The parties are in pari delicto, and melior est eonditio defendentis: notice to Jones and Harrell does not affect Powers; if it did, “ the Act requiring the recording of deeds would be nugatory, for he who wishes [makes] a double conveyance must necessarily know it, and the very object of the Act was to guard against this fraud.”
The observations here made as to notice agree with what had been previously decided, (vv)
In Swan vs. Ligon,(ww) it was decreed on the Circuit that a life estate had been forfeited : but under the view taken in the *461 Court of Appeals, the bill became, in effect, a bill by a remainderman to have security during the continuance of a life estate, for the forthcoming of slaves that had been sold and absolutely conveyed by a tenant for life.
A copy from a registry in Yirginia was admitted as the best evidence that could be adduced. The first purchaser was affected by actual notice: the second had not such notice, but against the complainant’s legal title, was considered to have no higher rights than a purchaser of stolen property would have against the owner. Incidentally, Judge Nott, delivering the opinion, which reformed the Circuit decree, says : “ The deed having been recorded in Yirginia is notice to the world.”
Two other cases, O’Neal vs. Cothran,(xx) and McFall vs. Sherrard,(yy) were in all circumstances material to the questions we are considering, like the one now in hand, except that in each of them, the creditor, to whom the second conveyance was made, had, before he recovered judgment, notice of the former conveyance. Those cases were decided upon the ground of notice, and no attention was paid in either of them to the circumstance that the first conveyance was recorded before the second one was made. Notice was, in the first of them, an indispensable circumstance to show the fraud, on account of which the second conveyance was cancelled. In the other, upon the principles of our present decision, the same result, which was attained, would have ensued if there had been no notice. We can only conjecture that the result would have been different, if the notice had not appeared; probably, however, it would have been. For that case preceded Barnwell vs. Porteous, Smith Sf Ravenel vs. Smith* and Martin vs. Sale,† all before cited, and in the unsettled condition of the law which subsisted when it was heard, there was a prevailing opinion that, although a judgment was not preferred to an unrecorded mortgage, nor a second conveyance instantly recorded preferred to a former one that had been recorded before the second was *462 made, yet a conveyance that had remained-unrecorded after the prescribed time, and until a judgment against the grantor was recovered,/was per se a fraud upon the judgment creditor, which could be urged by the purchaser at sheriff’s sale, unless by notice the imputation of fraud was rebutted. .The ruling's made in that case concerning creditors led to subsequent decisions, under, whose authority, it may now be perceived that the notice, made so prominent, there, was not a controlling circumstance.
It is ordered, that the motion for new trial, in each of the two cases we have been considering, be granted.
Dunkin, Dargan and Wardlaw, CC., and Evans, Frost and Whitner, J.T., concurred.

[a] Massy vs. Thompson, 2 N. & McC. 105; McFall vs. Sherrard, Harp. 296.

[b] Barnwell vs. Portcous, 2 Hill, Ch. 219; Smith vs. Smith, 1 McC. Ch. 148; Griffin vs. Wardlaw, Harp. 484; Ashe vs. Livingston, 2 Bay, 80; Hampton vs. Levy, 1 MoC. Ch. 113; Bank vs. Campbell, 2 Rich. Eq. 191; Ashe vs. Ashe, 1 Bay, 304; Greenwood vs. Bosquet, 2 Bay, 86.

[c] 5 Stat. 169; See State vs. Laval, 4 McC. 336; Ex parte City Sheriff, 1 McC. 399; Durand vs. Isaacs, 4 McC. 54.

[d] 2 Stat. 137.

[e] 7 Stat. 232.

[f] 11 Stat. 256.

[g] Fisliburne vs. Kunhardt, 2 Sp. 560-4; Bank vs. Gourdin, Sp. Eq.458; Gledson vs. Knight, Mss. Col. 1829, Book 3, 541.

[h] 2 Hill, Ch. 219.

[i] 1 Bay, 304.

[k] 7Sta,t.291.

[l] Bail. Eq.6.

[m] 11 Stat. 256.

[n] 2 Stat. 137. “ Whereas the want or neglect of registering and recording of sales, -conveyances and mortgages of lands [negroes] and other goods and chattels hath encouraged and given opportunity to several Knavish and necessitous persons to make two or more sales, conveyances and mortgages, &c., whereby buyers and lenders do lose, &c.— Enacted, That that sale, conveyance or mortgage of lands and tenements [except original grants] which Shall be first registered in the Register’s office in Charleston, shall be taken, deemed, adjudged, allowed of, and held to be the first sale, conveyance and [on] mortgage, and to be good, firm, substantial and lawful, in all Courts of judicature within South-Cardinal any former or other sale, conveyance or mortgage of the same land not before registered notwithstanding: — and that sale or mortgage of negroes, goods or chattels, which shall be first recorded in the Secretary’s office in Charleston, shall be taken, deemed, adjudged, allowed of and held to be the first [sale or] mortgage, and good, firm, substantial and lawful in all Courts of judicature within South-Carolina, any former or other sale or mortgage for the same negroes, goods and chattels not recorded in the said office notwithstanding"

[o] 7 Stat. 232. An Act for establishing County Courts and for regulating the proceedings therein:
§ 45. And whereas it is necessary to settle the mode of proving and recording deeds and other conveyances, in the several counties of this State, for preventing frauds ; Re it further enacted by the authority aforesaid, That no conveyance of lands, tenements or *445 hereditaments within this State, shall pass, alter or change from one person or persons to another, any estate of inheritance in fee simple or any estate for life or livesi — nor shall any greater or higher estate [than one For. years] he made, or take effect in any person or persons, or any nse thereof [to be) he made — by bargain or [and] sale, lease and release, or other instrument; unless the same he made in writing, signed, sealed and recorded in the Clerk’s Offioe of the County, where the land mentioned to ho passed or granted shall lie: in manner following; that is to sa.y; if the person or persons who shall make and seal such instrument of writing shall he resident within the State at the time of making, signing and sealing the same, then the recording thereof shall be within six months from the signing, sealing and delivery; and if the person or persons so making, signing and sealing, shall he resident in any other of the United States at the time aforesaid, then the recording shall be within twelve months; and if without the limits of the United States, then the recording shall he within two years. And if any deeds, or any other conveyances shall not he recorded within the respective times before mentioned, such deeds or other conveyances shall he legal and valid only as to the parties themselves and their heirs, hut shall ho void and incapable of barring the right of persons claiming as creditors, or under subsequent purchases, recorded in the mannor herein before prescribed: and no such deed or conveyance whatsoever of real estate shall he admitted to record in any County Court, unless the same he acknowledged in such Court by the grantor or grantors thereof in person, or otherwise by proof of the signing, sealing and delivery thereof to he made in open Court by the oath of two credible witnesses.

[p] 7 Stat. 234, § 47. "And to the end that persons who are inclined to lend money upon the security of lands or negroos, or to become purchasers thereof, may more easily discover whether the lands or slaves offered to be sold or mortgaged, be free from incum-brances ; enacted, that a memorial of sales and conveyances, mortgages, marriage settlements, deeds of trust, whereby any lands or slaves the property of any persons residing in this State, [are] charged, incumbered, or passed from one person to another, shall be registered in the Secretary’s office, in books to be kept for that purpose: which memorial shall contain the date of the deed or conveyance, the names, surnames and additions of the parties thereto, the consideration mentioned therein, the lands conveyed, settled or mortgaged, and where the same lie, and the number, names and ages of the slaves if any bo sold, settled or mortgaged: — and the Clerks of all and every of the County Courts within this State, are hereby required, twice in every year, in the months of January and June, to transmit memorials of all such deeds, settlements, mortgages or other conveyances, as shall have been proved and recorded in their respective Courts the preceding half year, to the Secretary’s office, to be there registered as aforesaid: — Provided always that nothing herein contained shall extend, or be construed to have retrospective operation, or to effect any deeds or other conveyances heretofore registered, or to be registered, asby law directed.”
[The office of Register then existing in Charleston was not abolished, yet no provision was mado for the Register’s transmitting memorials to tho Secretary. The manner in *446 which tho words registered and recorded aro used in the Act of 1698, and the 45th and 47th sections of that of 1785, and these last words, io be registered as by law directed, seem to show that tho continuance of the Register’s office was contemplated, even when the County Court system was enacted and expected to go into operation throughout the whole State.]
The 10th section of an Act of 1786 [7 Stat. 244,] alters the mode of proving “any deed or conveyance of land, hill of sale, mortgage or transfer of property,” to ho recorded in the County where “ such lands or other property ” are situate.
An Act of 1788 [7 Stat. 247] mado further alteration as to the mode of proving “any deed or conveyance” — for tho purpose of being recorded in the County Court: to ex-tendió <{ all deeds which shall have been executed at any time prior to the establishment of County Courts.”

[q] 4 Stat. 661. The whole State was divided into Counties, March 12,1785. 7 Stat. 211. County Courts established, March 24,1785 — the Justices in the first instance to be elected by joint nomination of the Senate and House of Representatives, § 1* but no County Court to be established for any County in tho districts of Charleston, Georgetown and Beaufort, until a majority of the taxable inhabitants of such County should apply by petition for the same, § 57.

[r] All the cases in Bay’s reports, concerning the recording of conveyances of land, having arisen in Charleston district, are treated and decided, as if the Act of 1785 had never been passed, but that of 1698 remained the only law on tho subject. See Bush vs. Trustees of Waring, 1 Bay, 85, 1789; Penman vs. Hart, 2 Bay, 254, 1800; Ashe vs. Ashe, 1 Bay, 302, 1793; Ashe vs. Livingston, 2 Bay, 84, 1797; Greenwood vs. Bocquet, 2 Bay, 86.
In 1793, Judge Watics considered that a mortgago of slaves was entitled to preference because it had been recorded in the Secretary’s office before another mortgage had been anywhore recorded: he thought that the provision of the County Court Act requiring recording to bo done where the property was situate, related only to lands: and that that deed of personalty which was first on record in any part of the State, ought to have preference; Harrison vs. Strother, 1 Bay, 326. In Conolly vs. Stewart, 2 Bay, 509, 1803, a second mortgago of a chattel interest in land was preferred to tho first, because the second was, according to the Act of 1698, first registered in the Register’s office, the other having been recorded in the Secretary’s office after the expiration of six months, but before the second one was made. Ho mention is made of tho Act of 1785, — no reference to its words “ estate of inheritance or for life,” nor to the delay in the recording of tho first mortgage. There was simply a decision of the question, which was the proper office, made in exclusive reference io the Act of 1698. In a note to this case, Judge Bay says, that in most of the country districts the offices for recording deeds of real property and those of personalty have been consolidated, but that they are still distinct and separate offices in Charleston. See Bx parte Leland, 1 N. & McC. 460.
In Boatwright & Glaze vs. Wingate, adm'r, 3 Brev. 423, 2 Tread. 521, 1814, four Judges were equally divided upon the question, whether the 47th section of the County *447 Court Act did not maleo the recording of a marriage settlement in the Clerk’s office sufficient, notwithstanding the special provisions of the other Act of the same session, [1785, 4 Stat. 656,1 in regard to the recording of marriage settlements. See also Alston vs. Alston, 3 Brev. 469,2 Tread. 604, 1814; Cheney vs. Lubbuck, 1 N. & McC. 444, 1819.
Chancellor DeSaussuro held, so lato as 1827, that a marriage settlement made in 1798, and recorded in the County Court of Lincoln County in Beaufort district, had been sufficiently recorded, — saying, “There is.great perplexity and confusion in our laws respecting the recording of deeds.” Bostick vs. Screven, 2 McC. Ch. 412. See note to Price vs. White, Bail. Eq. 250.
Deeds of all kinds were actually recorded in the books of the County Court Clerks, [see Hill and wife vs. Rooks, 5 Rich. 102.] And in the offices of the district clerks, ex oficio Registers of Mesne Conveyances, [which offices have been generally, but with doubtful propriety, considered as the substitutes of the County Court offices for recording deeds,] deeds relating to personalty [besides marriage settlements under the Act of 1823, and mortgages under the Act of 1843,] were for a long time frequently registered, and still are sometimes: — the practice which grow up in the County Courts, under the obvious purpose of the County Court Act, having become so inveterate, as to resist professional opinion and various decisions that have enforced the distinction between the Register’s office for realty, and the Secretary’s for personalty. See Roster vs. Calhoun, Dud. 77; Youngblood vs. Keadle, 1 Strob. 121; Yillard vs. Robert, 1 Strob. Eq. 397, 400; Gape Rear St. Boat vs. Connor, 3 Rich. 335; McCall vs. Lewis, 1 Strob. 442, and cases above cited.

[s] 4 Stat. 656; P. L. 357.

[t]5 Stat. 203.

[u] 6 Stat. 636, appendix. Bail. Eq. 250, note. See Lennox vs. Gibbes, 1 Des. 305; Garner vs. Garner, 1 Des. 442; Wilson vs. Wilson, 1 Des. 407; Roresi vs. Warrington, 2 Des. 255; Ballard vs. Taylor, 4 Dos. 550; Smith vs. Batterson, Chev. Eq. 30; Bostick vs. Screven, 2 McC. Ch. 412.

[v] 6 Stat. 212.

[w] 6 Stat. 482.

[x] Fowke vs. Woodward, Sp. Eq. 234; Baskins vs. Giles, Rico Eq. 322; Mullins & Austin, and other cases, cited in Fowke vs. Woodward.

 11 Stat. 256.

 3 Stat. 296, § 18.

 Bush vs. Waring, 1 Bay, 85 ; Penman vs. Hart} 2 Bay, 254; Ashe vs. Ashe} 1 Bay, 304; Ashe vs. Limngston) 2 Bay, 84.

 Cases cited note r.

 7 Stat. 291, clause 9, 1799.

 7 Stat. 298, § 32.

 7 Stat. 296, § 18.

 1 Stat. 143, § 29.

 4 Stat. 722. A special provision for recording deeds of personalty in the Register’s office at Georgetown was afterwardsmade. 5 Stat. 187.

 7 Stat. 269. See Hill vs. Hooks, 5 Rich. 102.

 See cases after 1800, note r.

 See notes u and r.

 Cape Fear St. Boat vs. Connor, 3 Rich. 335; McCall vs. Lewis, 1 Strob.442; Foster vs. Calhoun, Dud. 77; Youngblood vs. Keadle, 1 Strob. 121; Alston vs. Alston, 3 Brev. 469; and other cases cited note r.

 5 Stat. 111.

 5 Stat. 169, § 1, 3.

 See note aa.

 See notes b and r.

 McFall vs. Sherrard) Harp. 296; Barnwell vs. Porteous, 2 Hill. Ch. 219.

 Vide notes g and r.

 As to absolute conveyance under Act of 1785; Tart vs. Crawford, 1 McC. 266 ; McFall vs. Sherrard, Harp. 296; Knotts vs. Geiger, 4 Rich. 34; Ingrem rs. Phillips, *454 3 Stroll. 565; Quere, Massy vs. Thompson, 2 N. & McC. 105. As to mortgage of realty under the Act of 1785; Martin vs. Sale, Ball. Eq. 4. As to conveyance or mortgage of personalty under Act of 1698, Bank et al. vs. Gourdin et al. Sp. Eq. 443. As to wife’s inheritance under the Act of 1791, Kottman vs. Ayer, 1 Strob. 569. As to lease under Act of 1817, Anderson vs. Harris, 1 Bail. 315; Sp. Eq. 248. As to marriage settlement under Acte of 1785 and 1792, Givens vs. Bradford, 2 McC. 152; Righton vs. Righton, 1 Mill, 130; White vs. Palmer, McM. Eq. 115. As to marriage settlement under Act of 1823, Fowke vs. Woodward, Sp. Eq. 266 : “ There is no exception to the rule ’’ — said in an opinion carefully prepared.

 Vide note y, ante.

 LeFrinceyg. Guillemot, 1 Bich. Eq. 216; Martin vs. Qmttlebaum, 3 McC. 205.

 See note mm.

 See note nn.

 See notes r and b.

 5 Stat. 127.

 See note s, ante.

 See note v, ante.

 McCartney & Gordon vs. Ferguson, Pogson, et al., 2 Hill Ch. 180; Taylor vs. Heriot, 4 Des. 238; Forest vs. Warrington, 2 Des. 255; Wilson vs. Wilson, 1 Des. 407; Garner vs. Gamer, 1 Des. 442.

 See notes r and r, ante.

 Neal ys. Kerrs, 4 Geo. R. 161; Jackson vs. Town, 4 Cow. 605; Irvin vs. Smithy 17 Ohio R. 226; Scribner vs. Lockwood, 9 Hammond, 184; Goundie vs. Northampton Water Co., 7 Barr, 233; Mallory vs. Stoddard, 6 Ala. N. S. 806; 1 Green, H. J. 43.

 Law, Ool. 1829, Book 4, p, 425.

 Tart vs. Crawford, 1 McC. 266,1821 j Cabiness vs. Mahon^ 2 McO. 273, 1822.

 Equity, Col. 1829, Boole 3), p. 12.

 4 Des. 552, 1815.

 Harp. 295, 1824.

 See note 6, ante.

 See noto l, ante.